## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**WILLIAM SHIELL, IV, ET AL.**                    CIVIL ACTION

**VERSUS**                                        NO. 19-848-WBV-KWR

**JOSEPH G. JONES, ET AL.**                       SECTION: D (4)

## ORDER AND REASONS

Before the Court is a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, filed by Joseph G. Jones, Brian Berns, Kristina Skold Clark and David F. Waguespack (collectively, "Defendants").[1]  The Motion is opposed,[2] Defendants have filed a Reply,[3] and Plaintiffs have filed a Sur-Reply.[4]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED.**

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A. The Complaint.

This case arises out of the long and troubled history of alleged forgeries surrounding a business loan obtained by William Shiell IV and Janet Marie Broussard Shiell (collectively, "Plaintiffs") from Whitney National Bank (hereafter, "Whitney Bank").  Plaintiffs allege that they are dual citizens of the United States and Canada and that they have been domiciled in Canada since 1997, but that they

[1] R. Doc. 14.
[2] R. Doc. 74.
[3] R. Doc. 85.
[4] R. Doc. 91.

also owned a residence at 3705 Rue Chardonnay Drive in Metairie, Louisiana (hereafter, "the Metairie Property").[5]  Plaintiffs assert that in 2007, their company, Kitchens International, Inc. (hereafter, "Kitchens"), obtained a $500,000 line of credit from Whitney Bank, which was secured by an unrecorded collateral mortgage on the Metairie Property, which was solely owned by Mr. Shiell at all relevant times.[6]  Plaintiffs allege that defendants, Brian Berns and Joseph G. Jones, served as loan officers for Whitney Bank, and that defendant, Christina Skold Clark, served as outside counsel and as a notary for Whitney Bank.[7]  Plaintiffs allege that defendant, David Waguespack, served as outside counsel for Whitney Bank.[8]

Plaintiffs further allege that Mr. Shiell was diagnosed with cancer in November 2010, and that he returned to Canada for treatment.[9]  Plaintiffs also claim that Kitchens began suffering financial difficulties in 2011 and incurred considerable legal fees and expenses due to non-payment of commissions and for contracts Kitchens had performed in 2009 and 2010.[10]  Plaintiffs assert that they continued to pay the Whitney Bank loan on time despite these problems.[11]

Plaintiffs allege that in July 2012, they were informed by Whitney Bank that it wanted a recorded collateral mortgage on the Metairie Property, and that Mr. Shiell, the sole owner of the Metairie Property, "complied in good faith believing that

---

[5] R. Doc. 1 at ¶ 1.
[6] R. Doc. 1 at ¶¶ 1, 7 & 11.
[7] *Id*. at ¶¶ 3, 4, 5 & 7.
[8] *Id*. at ¶ 6.
[9] *Id*. at ¶ 9.
[10] *Id*. at ¶ 8.
[11] *Id*. at ¶¶ 8 & 9.

the bank would be flexible in the event his health or the business did not improve."[12] Defendants assert that Plaintiffs met with Jones at Whitney Bank on July 19, 2012, and Mr. Shiell executed a Collateral Note in the principal amount of $1,500,000.[13] The Collateral Note was paraphed by defendant, Kristina Skold Clark, a notary public, to identify it with a Collateral Mortgage and Assignment of Leases and Rents (the "Collateral Mortgage"), executed before Clark on July 19, 2012, by Mr. Shiell and intervenor, Mrs. Shiell.[14]  The Collateral Mortgage was filed in the mortgage records of Jefferson Parish, Louisiana on July 24, 2012.[15]  Mr. Shiell also executed a Security Agreement, dated July 19, 2012, whereby the Collateral Note was pledged to Whitney Bank to secure the prompt payment of all obligations and liabilities of Mr. Shiell and Kitchens.[16]  Additionally, Plaintiffs each executed a Continuing Guaranty in favor of Whitney Bank, also dated July 19, 2012, guaranteeing the indebtedness of Kitchens to Whitney Bank.[17]  Defendants assert that on September 10, 2012, Mr. Shiell, in his capacity as vice president of Kitchens, executed a Promissory Note in favor of Whitney Bank in the principal amount of $540,000.[18]

In their Complaint, filed on February 4, 2019, Plaintiffs allege that they were presented with certain documents for signature at Whitney Bank on July 19, 2012, but claim that those documents did not include the Collateral Note, the Collateral

---

[12] *Id*. at ¶¶ 10 & 11.
[13] R. Doc. 14-4 at p. 4.
[14] R. Doc. 14-4 at pp. 6-10.
[15] *Id*. at p. 5.
[16] *Id*. at pp. 11-12.
[17] *Id*. at pp. 13-20.
[18] *Id*. at pp. 21-23.

Mortgage or the Promissory Note (the "Alleged Forged Documents").[19]  Plaintiffs claim that Mr. Shiell's signature had been forged on these documents, and that the first time they saw the Alleged Forged Documents was during the subsequent Bankruptcy Proceeding, "on or after October 23, 2015."[20]  Although the Collateral Note and the Collateral Mortgage are signed by two witnesses and notarized by Clark, Plaintiffs allege that neither the notary nor the witnesses were present during the July 19, 2012 meeting to witness the execution of any document by Plaintiffs.[21]  Plaintiffs further allege that Mr. Shiell advised and updated Jones as to the status of his illness at the July 19, 2012 meeting.[22]

Despite the difficulties encountered by Plaintiffs and Kitchens, Plaintiffs allege that they never missed a payment on the Promissory Note which, if valid, would have expired in September 2013.[23]  Plaintiffs claim that, after deducting their payment for September 2013, Whitney Bank gave Plaintiffs 30 days to pay the balance of the Promissory Note.[24]  Plaintiffs assert that they were unable to pay the balance, and that Whitney Bank, through defendant, Brian Berns, fraudulently induced Plaintiffs to execute a forbearance agreement dated November 1, 2013 (the "Forbearance Agreement").[25]  While Plaintiffs do not dispute that they executed the Forbearance Agreement, they claim that they were fraudulently induced to do so based upon the statement in the Forbearance Agreement that Whitney Bank held a

---

[19] R. Doc. 1 at ¶ 12.
[20] *Id*. at ¶¶ 12, 34.
[21] *Id*. at ¶ 12.
[22] *Id*. at ¶ 14.
[23] *Id*. at ¶ 15.
[24] *Id*.
[25] *Id*.

valid Promissory Note dated September 10, 2012.[26]   Among other things, the Forbearance Agreement provides that Plaintiffs would pay the entire indebtedness owed under the Promissory Note by the earlier of the May 1, 2014 termination date, or an event of default, and that Whitney Bank would forbear from exercising its rights under the loan documents.[27]  Plaintiffs acknowledge that the Forbearance Agreement listed all of the loan documents, including the Alleged Forged Documents.[28]  Plaintiffs also concede that the Forbearance Agreement includes an agreement by Plaintiffs and Kitchens to release the Bank and its representatives from all claims arising out of or in any way related to the loan documents.[29]

On May 30, 2014, Plaintiffs and Kitchens executed an Amendment to the Forbearance Agreement, which extended the termination date of the Promissory Note to the earlier of December 31, 2014, or an event of default.[30]  The Amended Forbearance Agreement includes the same release language as the original Forbearance Agreement.[31]  In the Amended Forbearance Agreement, Plaintiffs also agreed to dismiss with prejudice all pending lawsuits against Whitney Bank and/or its officers, including their pending *pro se* action against Whitney Bank, Berns and Jones that was filed in this Court, entitled *Shiell, et al. v. Whitney National Bank, et al.*, Civ. A. No. 14-980.[32]  Pursuant to the Amended Forbearance Agreement,

---

[26] *Id*.
[27] R. Doc. 14-6 at pp. 6-15.
[28] R. Doc. 1 at ¶ 15; *See* R. Doc. 14-6 at p. 8.
[29] R. Doc. 1 at ¶ 15; *See* R. Doc. 14-6 at pp. 7, 8 & 11.
[30] R. Doc. 1 at ¶ 16; R. Doc. 14-6 at pp. 16-18.
[31] R. Doc. 1 at ¶ 17; *See* R. Doc. 14-6 at p. 16.
[32] R. Doc. 1 at ¶ 17; R. Doc. 14-6 at p. 17; R. Doc. 14-8.

Plaintiffs moved to dismiss their pending suit on June 10, 2014.[33]  Although Plaintiffs do not dispute that they signed the Amended Forbearance Agreement or that they dismissed their pending suit against Whitney Bank and its officers, Plaintiffs allege that they would not have done either had they known that the Promissory Note was invalid due to the forgery.[34]

On January 1 and 5, 2015, Plaintiffs and Kitchens executed a Second Forbearance Agreement dated December 31, 2014, extending the termination date of the Promissory Note to the earlier of June 30, 2015 or an event of default.[35]  The Second Forbearance Agreement contains the same release language as the two prior forbearance agreements.[36]  Plaintiffs allege that the Second Forbearance Agreement was emailed to them in Canada and that they signed it in Canada and returned it to Whitney Bank for Berns to sign in New Orleans.[37]  Plaintiffs concede that they signed the Second Forbearance Agreement, but only because they believed Whitney Bank held a valid Promissory Note.[38]

On June 12, 2015, Whitney Bank, through its counsel and defendant, David Waguespack, filed a Petition for Executory Process in the Twenty-Fourth Judicial District Court in Jefferson Parish, Louisiana, to foreclose on the Metairie Property (hereafter, the "Executory Proceeding").[39]  Whitney Bank attached a copy of the loan

---

[33] *See* R. Doc. 2 in Civ. A. 14-980-SM-JCW, *Shiell, et al. v. Whitney National Bank, et al.* (E.D. La.).
[34] R. Doc. 1 at ¶¶ 18 & 19.
[35] *Id*. at ¶ 21; R. Doc. 14-6 at pp. 19-20.
[36] R. Doc. 14-6 at p. 19.
[37] R. Doc. 1 at ¶ 21.
[38] R. Doc. 1 at ¶ 21.
[39] R. Doc. 1 at ¶ 23.  *See* R Doc. 14-6 at pp. 21-24.

documents to the Petition, including the Alleged Forged Documents.[40]  The court issued an Order on June 12, 2015, commanding the sheriff to seize and sell the Metairie Property, and the sale was scheduled for October 7, 2015.[41]  Plaintiffs allege that they were never served with a copy of the Petition, even though they had advised Waguespack numerous times that they were residing in Montreal.[42]  Plaintiffs claim that they were unaware of the case until late August 2015, when they received a copy of the Petition, without the loan documents attached, from attorney Rachel Silvers, who claimed to be a curator appointed by the state court to find Plaintiffs because their whereabouts were purportedly unknown by Whitney Bank.[43]  Although omitted from their Complaint, Plaintiffs filed an Answer in the Executory Proceeding on August 31, 2015, making similar allegations to those raised in their 2014 *pro se* action against Whitney Bank, Berns and Jones (Civ. A. No. 14-980), which was ultimately dismissed by this Court.[44]  As Defendants point out, Plaintiffs did not complain of any forgeries in their Answer filed in the Executory Proceeding or in their 2014 *pro se* Complaint, and admitted to signing the Collateral Mortgage.[45]

On October 5, 2015, Mr. Shiell filed a voluntary petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of Louisiana (hereafter, the "Bankruptcy Proceeding").[46]  As a result, the sheriff's sale of the Metairie Property, scheduled for October 2015, was stayed pursuant to 11

---

[40] R. Doc. 14-6 at pp. 28-64.
[41] R. Doc. 14-6 at p. 25.  *See* R. Doc. 14-1 at p. 6; R. Doc. 1 at ¶ 26.
[42] R. Doc. 1 at ¶ 23.
[43] R. Doc. 1 at ¶ 24.
[44] R. Doc. 14-10; *See* R. Doc. 14-8.
[45] R. Doc. 14-1 at pp. 6-7 (*citing* R. Doc. 14-10).  *See* R. Doc. 14-8.
[46] R. Doc. 1 at ¶ 29.

U.S.C. § 362(a).  On October 23, 2015, Whitney Bank filed a Motion to Lift Stay in the Bankruptcy Proceeding, and attached a copy of all of the loan documents, including the Alleged Forged Documents.[47]  Plaintiffs allege that the first time they saw the Alleged Forged Documents was when they were served with the Motion to Lift Stay on or about October 23, 2015 by mail.[48]  Defendants point out that Mr. Shiell filed his proposed Chapter 13 plan of reorganization on October 24, 2015, acknowledging that he personally guaranteed Whitney Bank's loan to Kitchens and that the loan was secured by the Metairie Property.[49]  Mr. Shiell proposed that the proceeds from the sale of the Metairie Property would pay off the loan, with the balance of the proceeds going to the Chapter 13 Trustee to pay unsecured claims.[50]  There are no allegations of forgery or fraud in the proposed Chapter 13 plan.

On November 21, 2015, Mr. Shiell, who was represented by counsel, filed a one-page Objection to Whitney Bank's Motion to Lift Stay, requesting one year to sell the Metairie Property in accordance with his proposed plan of reorganization.[51]  Like the proposed reorganization plan, the objection does not raise any allegation of forgery or fraud.  Mr. Shiell also did not disclose any potential claim against Whitney Bank in his bankruptcy schedules.[52]  The Bankruptcy Court granted Whitney Bank's Motion to Lift Stay on December 10, 2015, allowing Whitney Bank to foreclose on the Metairie Property.[53]  In their Complaint, Plaintiffs allege that Whitney Bank

---

[47] R. Doc. 14-6 at pp. 66-157; R. Doc. 1 at ¶ 30.
[48] R. Doc. 1 at ¶ 34.
[49] R. Doc. 14-11. at p. 2.
[50] R. Doc. 14-11.
[51] R. Doc. 14-12.
[52] R. Doc. 14-13.
[53] R. Doc. 14-14.

obtained relief from the bankruptcy stay through the use of forged documents, fraudulently obtained forbearance agreements and a false affidavit from Berns.[54]

On February 4, 2019, Plaintiffs filed the instant Complaint, alleging that the Defendants' actions, as outlined above, violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO").[55]   Plaintiffs allege that Defendants committed several acts of wire fraud to Canada, two acts of wire fraud for pleadings filed in the Bankruptcy Proceeding, two acts of mail fraud to Canada, and one act of mail and wire fraud to Canada.[56]  Plaintiffs also allege that Defendants' actions violated the Louisiana racketeering statute through the creation, operation and conspiracy to operate a racketeering enterprise, based upon theft by fraud, creation of false public records by filing forged documents in the mortgage records, and creation of false public records based upon documents filed in the Executory Proceeding.[57]

## B. Defendants' Motion to Dismiss or, Alternatively, Motion for Summary Judgment.

On June 4, 2019, Defendants filed the instant Motion to Dismiss or, Alternatively, Motion for Summary Judgment (the "Motion"), seeking dismissal of the Complaint under Fed. R. Civ. P. 12(b)(6).[58]  Defendants assert that this is the fifth time that Plaintiffs have asserted claims against Whitney Bank (now Hancock Whitney Bank) and its representatives and attorneys relating to the foreclosure of

---

[54] R. Doc. 1 at ¶ 31.
[55] R. Doc. 1.
[56] R. Doc. 1 at ¶ 35.
[57] *Id*. at ¶ 36.
[58] R. Doc. 14.

the Metairie property.[59]  Defendants assert that Plaintiffs have a history of making frivolous claims against not only Whitney Bank and its officers, but others who seek to collect amounts owed to them, and that Plaintiffs have a habit of alleging forgery when it benefits them.[60]  Defendants seek dismissal based upon the documents attached to their Motion, which they contend are referenced in the Complaint and central to Plaintiffs' claims, as well as documents of public record of which the Court may take judicial notice.  However, if the Court considers matters outside the scope of Rule 12(b)(6), Defendants assert that the Court should grant summary judgment and dismiss Plaintiffs' Complaint, in its entirety, with prejudice pursuant to Fed. R. Civ. P. 56.[61]  Defendants assert that Plaintiffs' claims must be dismissed with prejudice because: (1) Plaintiffs released all claims against Whitney Bank, its representatives and its attorneys pursuant to the Forbearance Agreements; (2) the claims are barred by *res judicata* and judicial estoppel; (3) Plaintiffs have failed to adequately plead RICO claims; and (4) Mrs. Shiell lacks standing in this case.[62]

Defendants first assert that Plaintiffs' claims are precluded because they released Whitney Bank, its employees and its attorneys from all claims related to "the Loan Documents" in the three Forbearance Agreements.[63]  Defendants point out

---

[59] R. Doc. 14-1 at p. 1.  Defendants point to the Executory Proceeding, the Bankruptcy Proceeding, a 2014 *pro se* Complaint filed in this Court in the case *Shiell, et al. v. Whitney National Bank, et al.*, Civ. A. No. 14-980 (E.D. La.), and a 2016 lawsuit filed in Civil District Court for the Parish of Orleans, Louisiana, entitled *Shiell, et al. v. Whitney National Bank, et al.*, Case No. 16-1530.  *Id.* at pp. 4-8; R. Doc. 14-15.  Defendants claim that Plaintiffs voluntarily dismissed the 2014 case, and that the 2016 case is deemed abandoned because no action has been taken since the case was filed.  R. Doc. 14-1 at pp. 5 & 8.
[60] *Id.* at p. 4 n.2.
[61] *Id.*
[62] *Id.* at pp. 1-2.
[63] R. Doc. 14-1 at pp. 12-13 (*citing* R. Doc. 14-6 at pp. 6-20).

that the phrase "Loan Documents" is defined in the original Forbearance Agreement to include, among other documents, the Alleged Forged Documents – the September 10, 2012 Promissory Note for $540,000, the July 19, 2012 Collateral Mortgage and Assignment of Leases and Rents, and the July 9, 2012 Collateral Note for $1,500,000.[64]  Defendants assert that Plaintiffs' claims hinge on their allegation that their signatures were forged on these documents.  Defendants point out, however, that Plaintiffs admit to signing the Forbearance Agreement and amendments thereto, wherein they not only expressly acknowledged the Alleged Forged Documents, but also released all claims against Whitney Bank, its employees and its attorneys arising out of those documents, including claims based on "federal and state statutes" and "fraud."[65]  Because settlement agreements have the same preclusive effect as judgments in Louisiana and can form the basis of a res judicata defense, Defendants argue that Plaintiffs' claims are precluded and should be dismissed with prejudice.[66]

Defendants further assert that Plaintiffs' claims are barred by res judicata, which requires four elements: (1) parties who are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.[67]  Defendants claim that all four

---

[64] R. Doc. 14-1 at p. 13 (*citing* R. Doc. 14-6 at pp. 7-8).
[65] R. Doc. 14-1 at p. 13 (*citing* R. Doc. 14-6 at pp. 7, 8, 16, 19).
[66] R. Doc. 14-1 at p. 13 (citing *Dowl v. Redi Care Home Health Ass'n*, 2004-1182 (La. App. 4 Cir. 4/6/05), 917 So.2d 434, 438-39; La. Civ. Code art. 3080).
[67] R. Doc. 14-1 at p. 14 (citing *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999)).

requirements are met in this case based upon the Bankruptcy Court's December 10, 2015 Order Lifting Stay and the June 12, 2015 Order in the Executory Proceeding.[68] Defendants assert that both are valid, final Orders ruling on the validity and enforceability of the loan documents and the Collateral Mortgage, the validity of which Plaintiffs are now disputing.[69]  Defendants point out that, by their own admission, Plaintiffs were aware of the Alleged Forged Documents when Whitney Bank filed its Motion to Lift Stay on October 23, 2015, yet neither the Answer filed in the Executory Proceeding, nor the Objection filed in the Bankruptcy Proceeding, raised the defense of forgery.[70]  As such, Defendants argue Plaintiffs' claims are precluded by the doctrine of res judicata.

Defendants also assert that Plaintiffs' claims are barred by judicial estoppel, which is an equitable doctrine that can be invoked by a court to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding.[71]  Defendants assert that the Fifth Circuit has held that judicial estoppel only applies where the position of the party to be estopped is clearly inconsistent with its prior position, and where the party convinced a court to accept its prior position.[72]  Defendants argue that those requirements are met in this case because Plaintiffs were aware of the Alleged Forged Documents both before and after Mr. Shiell filed for bankruptcy, because the documents were attached as exhibits to

---

[68] R. Doc. 14-1 at p. 14.
[69] *Id*.
[70] *Id*.
[71] *Id*. at p. 18 (quoting *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012)) (internal quotation marks omitted).
[72] R. Doc. 14-1 at p. 18 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999)) (internal quotation marks omitted).

Defendants' Petition in the Executory Proceeding,[73] and as exhibits to Defendants' Motion to Lift Stay filed in the Bankruptcy Proceeding.[74]   Defendants emphasize that Mr. Shiell did not disclose any potential claim against Whitney Bank in his bankruptcy schedules, and never mentioned a potential claim against Whitney Bank or its officers or counsel while the bankruptcy proceeding was pending.[75]   Defendants argue that, as a result, Mr. Shiell represented to the Bankruptcy Court and all creditors that he did not have any such claim and that the loan documents were valid. Defendants claim that the Bankruptcy Court, in granting Defendants' request to lift the stay, accepted Mr. Shiell's omission of any reference to an alleged forgery.[76] Defendants argue that Plaintiffs' claims in this case are clearly inconsistent with their prior positions in both the Bankruptcy Proceeding and the Executory Proceeding.   Defendants also argue that those courts accepted Plaintiffs' prior positions, including their non-disclosure of any forgery, when they entered valid, final Orders recognizing the validity of the debt and Whitney Bank's lien.[77]   As such, Defendants assert that Plaintiffs' claims are barred by judicial estoppel.

Defendants further assert that Plaintiffs' RICO claims fail because Plaintiffs failed to allege sufficient facts to satisfy the following three requirements for any RICO claim under 18 U.S.C. § 1962: (1) a person who engages in; (2) a pattern of

---

[73] R. Doc. 14-1 at p. 19 (*citing* R. Doc. 1 at ¶ 24).   Although Defendants also cite to "Ex. B-2," this is likely a typographical error, as the Petition for Executory Process, and the exhibits attached thereto, were attached to Defendants' Motion as Exhibit C-2 (R. Doc. 14-6 at pp. 21-65).
[74] R. Doc. 14-1 at p. 19.   Although Defendants cite to "Ex. B-3," this is likely a typographical error, as there is no Exhibit B-3 attached to the instant Motion.   Further, the Motion For Relief from Automatic Stay appears at Exhibit C-3 (R. Doc. 14-6 at pp. 66-157).
[75] R. Doc. 14-1 at p. 19 (*citing* R. Doc. 14-13).
[76] R. Doc. 14-1 at pp. 19-20 (citation omitted).
[77] R. Doc. 14-1 at p. 20.

racketeering activity; (3) connected to the acquisition, establishment, conduct or control of an enterprise.[78]   Defendants argue that Plaintiffs have not indicated a particular section of RICO under which they are bringing this action, have not specified any statutes allegedly violated, have not pled the elements of any predicate offense, have not identified a particular Defendant against which they are asserting their RICO claim, have not alleged with particularity the misconduct of each Defendant, and have not alleged a pattern of racketeering activity.[79]   Defendants argue that Plaintiffs have failed to allege a pattern of racketeering activity under Fifth Circuit precedent because the alleged predicate acts in the Complaint were part and parcel of a single, otherwise lawful transaction.[80]   Defendants assert that this Court has held that a state foreclosure proceeding "fits this mold," and that there can be no pattern of racketeering activity where the plaintiff alleges conduct that had an inherent and definite termination point and did not present a future threat of repetition.[81]   Defendants argue that their conduct had an inherent and definite termination point – the  foreclosure of the Metairie Property – and did not present a future threat of repetition.   Thus, Defendants claim that Plaintiffs have failed to allege predicate acts or a pattern of racketeering activity.

Defendants also claim that Plaintiffs have not pled sufficient facts to establish an enterprise.   Relying upon Fifth Circuit precedent, Defendants assert that an

---

[78] R. Doc. 14-1 at pp. 20-21 (citing *Abraham v. Singh*, 480 F.3d 351, 354-55 (5th Cir. 2007)).

[79] R. Doc. 14-1 at pp. 21-22.

[80] R. Doc. 14-1 at p. 22 (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996)) (quotation marks omitted).

[81] R. Doc. 14-1 at pp. 22-23 (quoting *Bordelon v. Wells Fargo Fin. La., LLC*, Civ. A. No. 18-2563, 2018 WL 2717521 (E.D. La. June 6, 2018); *Howell v. Adler*, Civ. A. No. 16-14141, 2017 WL 1064974 (E.D. La. Mar. 21, 2017)) (quotation marks omitted).

"association-in fact" enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct, and that the linchpin of enterprise status is the continuity or ongoing nature of the association.[82]   Defendants argue that Plaintiffs have not alleged that Defendants associated at all, much less for a common purpose.[83]   Defendants also claim that Plaintiffs have not alleged an enterprise that is continuing and ongoing, as their allegations against Defendants relate to their roles as loan officers for Whitney Bank, counsel for Whitney Bank in the Bankruptcy and Executory Proceedings, and as outside counsel and notary for Whitney Bank.[84] Thus, Defendants maintain that Plaintiffs' RICO claims must be dismissed.

For these same reasons, Defendants argue that Plaintiffs have failed to allege sufficient facts to support a claim under the Louisiana Racketeering Act, La. R.S. 15:1351, *et seq*., and that those claims must also be dismissed.[85]

Finally, Defendants assert that Mrs. Shiell lacks standing as a RICO plaintiff because the Complaint fails to allege any injury to her business or property.[86] Instead, Plaintiffs allege they were injured through the foreclosure of the Metairie Property, which was solely owned by Mr. Shiell.[87]

Although not specified in their Motion, Defendants appear to assert that if the Court converts their Motion to Dismiss into a Motion for Summary Judgment,

---

[82] R. Doc. 14-1 at p. 23 (quoting *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003); *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015)) (quotation marks omitted).
[83] R. Doc. 14-1 at p. 24.
[84] R. Doc. 14-1 at p. 24.
[85] R. Doc. 14-1 at pp. 24-25.
[86] R. Doc. 14-1 at p. 25 (*citing* 18 U.S.C. § 1964(c); *Khurana v. Innovative Health Care Sys.*, 130 F.3d 143, 147 (5th Cir. 1997)).
[87] R. Doc. 14-1 at p. 25.

Plaintiffs claims should be dismissed for the same reasons set forth above. Defendants submitted a Statement of Uncontested Facts to show that they are entitled to summary judgment.[88]

### C. Plaintiffs' Opposition to the Motion.

Plaintiffs oppose the Motion, asserting that the Alleged Forged Documents were not signed by Mr. Shiell, as evidenced by the "Amended Handwriting Report by Adele Thonn of the Write Image."[89]  According to Plaintiffs, Thonn concluded that there is a "Strong Probability" that the signature on the September 2012 Promissory Note is not Mr. Shiell's signature.[90]  Plaintiffs claim this is the strongest affirmation an expert can provide, other than stating, with certainty, that the signature is or is not authentic.[91]  Plaintiffs further assert that Defendants' own handwriting expert, Rigo Vargas, could not say that there was anything more than a possibility that Mr. Shiell signed the Collateral Mortgage.[92]  Plaintiffs argue that these two expert reports show that the instant Motion should be denied.[93]  Plaintiffs also take issue with the fact that Defendants did not submit affidavits from Thais Wille and Ashley Minor, the two purported witnesses to the loan documents.  Plaintiffs maintain that

---

[88] R. Doc. 14-3.

[89] R. Doc. 74 at p. 2.  Although Plaintiffs claim that Thonn's report is attached to their Opposition brief, Plaintiffs did not attach any exhibits to their Opposition brief.  *Id*.  Plaintiffs also assert that the Amended Handwriting Report "has previously been filed with the Court in this case as Exhibit J."  *Id*. After scouring the record in this case, the Court found a June 29, 2017 report from Adele Thonn, which was attached as Exhibit A to Plaintiffs' RICO Case Statement.  *See* R. Docs. 41 & 41-1 at pp. 1-4.

[90] R. Doc. 74 at p. 2.

[91] *Id*.

[92] R. Doc. 74 at p. 2.  Plaintiffs claim that Vargas' report "has been filed in this Court as a Defendants' exhibit," but do not specify where in the record Vargas' report can be found.  *Id*.

[93] R. Doc. 74 at pp. 2, 6, 7, 8, 9, 11.

there were no witnesses to the signing of any loan documents other than Jones.[94] Although Defendants submitted an affidavit from Clark, who purportedly notarized the loan documents, Plaintiffs maintain that there was no notary or witness present when they signed the loan documents in 2012.[95]

Plaintiffs further assert that they have contested the validity of the Collateral Mortgage since Mr. Shiell first viewed the document in April 2016, after receiving his bankruptcy file from his bankruptcy attorney.[96]  Plaintiffs claim that they did not include forgery of the loan documents in their February 2016 lawsuit because they had not yet seen the forged documents.[97]  Plaintiffs assert that they asked their former counsel to amend that lawsuit to raise the issue of forgery, but their counsel refused to do so until Plaintiffs engaged a handwriting expert to support their claim.[98] Plaintiffs assert that, by the time they retained Thonn and she produced her first report in June 2017, the case was too old to amend.  As a result, Plaintiffs filed the instant Complaint asserting RICO claims.[99]

Plaintiffs also assert that the Forbearance Agreements did not validate the loan documents, and that the loan documents were never attached to the Forbearance Agreements for Mr. Shiell's review.[100]  Plaintiffs assert that, contrary to his assertion in the Executory Proceeding, Waguespack knew Plaintiffs were residing in Montreal and should have served Plaintiffs with the Petition and the attached loan documents

[94] R. Doc. 74 at p. 10.
[95] *Id*.
[96] *Id*. at pp. 2-3.
[97] *Id*. at pp. 5-6.
[98] *Id*. at p. 6.
[99] *Id*. at p. 6.
[100] *Id*. at p. 3.

instead of appointing a curator ad hoc to find and serve Plaintiffs.[101]  As such, Plaintiffs ask the Court to "take action against" Waguespack for committing perjury, in violation of 18 U.S.C. § 1623(c).[102]  Plaintiffs also complain that the curator filed an Answer in the Executory Proceeding before speaking to Plaintiffs or serving them with a copy of the Defendants' Petition.[103]  Plaintiffs allege that Ms. Shiell called the curator after receiving a copy of the Petition, Answer and "the Sheriff's documents" by email on August 6, 2015, but that the curator refused to do anything further for Plaintiffs.[104]

Plaintiffs argue that res judicata does not apply because their prior cases were decided before Plaintiffs "had an opportunity to oppose them based on the forgery they discovered in the notes in April 2016."[105]  Plaintiffs also contend that Mrs. Shiell has standing in this case because Defendants sued Mrs. Shiell in the Executory Proceeding and are now claiming in this case that Mrs. Shiell is indebted to the bank.[106]  In the event that the Court converts Defendants' Motion to Dismiss into a Motion for Summary Judgment, Plaintiffs maintain that the Motion should be denied because there are several material facts that Plaintiffs strongly contest, as evidenced by their Statement of Contested Facts.[107]

In what appears to be a second Opposition brief, Plaintiffs assert that Defendants are all guilty of making false statements in their Memorandum in

---

[101] *Id*. at pp. 3-4.
[102] *Id*. at pp. 4-5.
[103] *Id*. at p. 7.
[104] *Id*. at p. 7.
[105] *Id*. at p. 11.
[106] *Id*.
[107] *Id*. at p. 11; *See* R. Doc. 74-2.

Support of the instant Motion, and maintain that Waguespack committed perjury in the Executory Proceeding.[108]   Plaintiffs maintain that the Collateral Note, the Collateral Mortgage and the Promissory Note were all forged and that their prior lawsuits were not frivolous.[109]   Plaintiffs assert that the Forbearance Agreements are fraudulent documents because they falsely claim that Whitney Bank holds a valid Promissory Note.[110]   Plaintiffs maintain that res judicata and judicial estoppel do not apply in this case because Plaintiffs were unaware of the Alleged Forged Documents when judgments were issued in the Bankruptcy Proceeding and the Executory Proceeding.[111]   Plaintiffs further assert that judgments based upon forged documents or agreements (like the Forbearance Agreements) cannot lead to res judicata.[112]   Plaintiffs claim that they have alleged sufficient facts to support their RICO claims, relying upon their RICO Standing Order that was previously filed with the Court.[113]   Plaintiffs maintain that Mrs. Shiell has standing in this case because she was President of Kitchens, which was sued by Whitney Bank, and because she was sued with Mr. Shiell and Kitchens as the guarantor of Kitchens' indebtedness.[114]

---

[108] R. Doc. 74-4.

[109] *Id*. at pp. 2-3.

[110] *Id*. at p. 4.

[111] *Id*. at pp. 4 & 6.

[112] *Id*. at pp. 4-5.  Plaintiffs claim that when all of this was happening, they were fighting other legal battles, including the succession of Mr. Shiell's parents, suits involving business investments "where the Shiells had been duped," and Mrs. Shiell's son's criminal case, and that Mr. Shiell was seriously ill and under heavy opioid medication, which limited his ability to understand or help Mrs. Shiell with these proceedings.  *Id*. at p. 5.

[113] *Id*. at p. 7.  Although not cited by Plaintiffs, their RICO Standing Order can be found at R. Doc. 41.

[114] R. Doc. 74-4 at p. 7.

**D. Defendants' Reply Brief.**

In response, Defendants assert that, despite the numerous prior legal proceedings involving the same loan, Plaintiffs never raised an allegation of forgery until they filed the instant Complaint.[115]  As such, Defendants assert that Plaintiffs are now taking a position that is completely inconsistent and contrary to pleadings they filed in the prior actions.[116]  Defendants maintain that their Motion to Dismiss should be granted based upon the release contained in the Forbearance Agreements, judicial estoppel, res judicata, the insufficiency of the RICO allegations and because Mrs. Shiell has not alleged any injury to her business or property.[117]

Alternatively, Defendants assert that their Motion for Summary Judgment should be granted because Plaintiffs have not offered any competent summary judgment evidence to show there is a genuine issue for trial.[118]  Defendants assert that Plaintiffs cannot collaterally attack the loan documents based on allegations of forgery more than three years after they could, and should, have raised these issues in their Objection to Defendants' Motion to Lift Stay filed in the Bankruptcy Proceeding, or their Answer filed on August 31, 2015 in the Executory Proceeding.[119]  Defendants also submitted with their Reply brief the affidavits of Asley Miner and Thais Wille, the two witnesses to the Collateral Mortgage, to show that they were physically present in the room and personally observed both Plaintiffs sign the

---

[115] R. Doc. 85 at p. 1.
[116] *Id*. at p. 2.
[117] *Id*. at p. 3.
[118] *Id*. at p. 4.
[119] *Id*. at pp. 4-5.

Collateral Mortgage on July 19, 2012.[120]  In a lengthy footnote, Defendants explain that on October 3, 2019, counsel for Defendants held a telephone conference with Mrs. Shiell to discuss their preparation of the Pre-trial Order, during which Mrs. Shiell stated that she had contacted Ms. Wille, who would testify that she was not physically present in the room when Plaintiffs signed the Collateral Mortgage and other loan documents on July 19, 2012.[121]  While reserving their right to call either of their attorneys of record who were present on the call to testify regarding Mrs. Shiell's admission that she and her husband signed the Collateral Mortgage they now claim was forged, Defendants assert that Mrs. Shiell's statements regarding her communication with Mrs. Wille were false.  Defendants claim that, shortly after the October 3, 2020 phone call, Jones advised Defendants' counsel that Ms. Wille had contacted him because she had received a voicemail from Mrs. Shiell.  Defendants assert that their counsel contacted Ms. Wille, who confirmed that she has never spoken with Mrs. Shiell about this case.  Ms. Wille also confirmed that she was physically present in the room and witnessed Plaintiffs sign the Collateral Mortgage on July 19, 2012, before she signed as a witness, as stated by Ms. Wille's affidavit submitted with the Reply brief.[122]

Defendants further argue that Plaintiffs' assertions regarding the handwriting experts is both irrelevant for purposes of summary judgment and false. [123] Defendants claim that the handwriting reports are not competent summary

---

[120] *Id*. at p. 5.
[121] *Id*. at n.6.
[122] *Id*.
[123] *Id*.

judgment evidence because they are unsworn.[124]   Defendants assert that Vargas opined that Mr. Shiell probably signed the Collateral Note and the Promissory Note, but did not reach a definite conclusion regarding whether he signed the Collateral Mortgage.[125]   Defendants further assert that Thonn opined that there is a strong probability that Mr. Shiell did not sign the Promissory Note, but merely found that there are indications that Mr. Shiell did not sign the Collateral Note or the Collateral Mortgage.[126]   Finally, Defendants argue that because Plaintiffs failed to timely respond to their Requests for Admissions, the requests are deemed admitted and Plaintiffs are deemed to have admitted that Mr. Shiell signed the Alleged Forged Documents.[127]

### E. Plaintiffs' Sur-Reply Brief.

In their Sur-Reply brief, Plaintiffs assert that Defendants' Reply brief is an attempt to amend their Motion to Dismiss to add a claim for prescription, based on Defendants' assertion that Plaintiffs should have raised the alleged forgeries over three years before they filed this suit in February 2019.[128]   Plaintiffs then assert that, "The Executive Process . . . should not stand" in light of the fact that the state court granted Defendants' Petition because Defendants falsely claimed that they did not know Plaintiffs' whereabouts.[129]   Plaintiffs then recount the timeline of events, noting that they were not served with a copy of the Petition filed in the Executory Proceeding

---

[124] *Id*. at pp. 5-6 (citing *Smith v. Palafox*, 728 Fed.Appx. 270, 275 (5th Cir. 2018)).
[125] R. Doc. 85 at p. 6 (*citing* R. Doc. 85-3).
[126] R. Doc. 85 at p. 6 (*citing* R. Doc. 75-5).
[127] R. Doc. 85 at pp. 6-7 (*citing* R. Doc. 85-4, pp. 8-9).
[128] R. Doc. 91 at pp. 1-2.
[129] *Id*. at p. 2.

(without the exhibits) and response thereto until August 6, 2015, when they received the documents by email.[130]  Plaintiffs maintain that, had they been timely served with the Petition and attached loan documents, they could have stopped the foreclosure on the Metairie Property and there would have been no need for the Bankruptcy Proceeding because they would have realized that the loan documents were forged.[131]

Plaintiffs dispute several claims in the Reply brief, including Defendants' assertion that Plaintiffs' Opposition brief includes information that was not in their Complaint.[132]  Plaintiffs contend that all of the "new information" is contained in their RICO Standing Order, which amended their Complaint.[133]  Plaintiffs also assert that, although Mr. Shiell filed an Answer to Defendants' Motion to Lift Stay, he had no idea how to answer the motion because he is not an attorney.[134]  Plaintiffs dispute Defendants' claim that Mrs. Shiell never alleged a loss to her business, as she was President of Kitchens and owned 50% of the stock, which was damaged as a result of Defendants' actions.[135]  Plaintiffs also claim that they have been refused the opportunity to depose Defendants, their expert, or their witnesses and, as such, have not had access to competent summary judgment evidence.[136]  Plaintiffs assert that

---

[130] *Id*. at pp. 2-3.
[131] *Id*. at p. 3.
[132] *Id*. at p. 5.
[133] *Id*.
[134] *Id*. at p. 6.
[135] *Id*.
[136] *Id*.  The Court notes that on December 27, 2019, it granted Plaintiffs' Motion to Amend and Reopen Scheduling Order to Allow Limited Depositions by Plaintiffs (R. Doc. 99), giving Plaintiffs until January 31, 2020 to depose defendants, Jones, Berns, Clark, and Waguespack, as well as Wille, Miner, and the corporate representative of Whitney Bank.  R. Doc. 106.  The Court further notes that

they planned to demand that Clark provide proof of her presence and her notarizations on the loan documents by providing her billing statements and proof of payment from Whitney Bank on the pertinent dates which, Plaintiffs contend, "could have cast a serious doubt on whether the notary was in fact present and witnessed the signatures."[137]   While Defendants submitted affidavits from Wille and Miner, who each swear that they witnessed the Plaintiffs' signing of the loan documents, Plaintiffs maintain that the only people present were Plaintiffs, Jones and Berns.[138]

Plaintiffs also contest Defendants' assertion regarding their failure to timely respond to discovery, noting that the Court has given them until October 24, 2019 to answer the interrogatories.[139]   Plaintiffs then assert that the Court failed to respond to any of their motions for delays and rescheduling until the pre-trial conference, "forcing the Plaintiffs to expend a great deal of time preparing documents for a Pretrial conference which was obviously premature."[140]   Without citing any legal authority, Plaintiffs assert that, "Law plainly states that if a Plaintiff has a motion pending, he or she has a right to have that motion heard before a dispositive motion for the Defendant is granted.  This simply did not happen in this case."[141]   Plaintiffs

_____

Plaintiffs have never sought leave to amend their Opposition or Sur-Reply briefs to include the transcripts from any of the foregoing depositions allowed by the Court.

[137] R. Doc. 91 at p. 5.

[138] *Id*. at p. 7.

[139] *Id*.  Although not cited by Plaintiffs, it appears that they are referencing Magistrate Judge Roby's October 10, 2019 Order, granting Defendants' Motion to Compel Plaintiffs' Discovery Responses and requiring Plaintiffs to respond to Defendants' interrogatories and requests for production of documents by October 24, 2019.  R. Doc. 80.  Judge Roby's Order does not address Defendants' requests for admissions.  The Court further notes that Plaintiffs' Sur-Reply brief is dated October 29, 2019.

[140] R. Doc. 91 at p. 8.

[141] *Id*.  While Plaintiffs refer to "the Plaintiffs' motion for delays and rescheduling," Plaintiffs do not specify the motions that they are referring to in this statement.  *Id*.  The record shows that Plaintiffs filed several motions to continue trial and a motion for extension of time on September 24, 2019 (R. Docs. 60, 63 & 64), which the Court ruled upon before Plaintiffs filed their Reply brief on October 29,

also assert that Defendants falsely claim that Plaintiffs' Complaint relies on mere conclusions, when Plaintiffs have provided "both public record as well as expert testimony."[142] Plaintiffs assert that the expert reports, even without affidavits, can constitute disputed facts on summary judgment, and that Defendants' misquote of the handwriting experts' conclusions is "deliberately misleading to the court."[143] Finally, Plaintiffs argue that the Motion to Dismiss must be denied because Fed. R. Civ. P. 12 prohibits Defendants from filing a second motion to dismiss that includes information that was available to Defendants when they filed their first motion to dismiss, but was not included in the prior motion.[144]

## II.   LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(b) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[145] To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[146] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

2019. *See* R. Docs. 69 & 86.  The Court further notes that the only motion currently pending before the Court is Defendants' Motion to Dismiss.  R. Doc. 14.

[142] R. Doc. 91 at p. 9.

[143] *Id.*

[144] *Id.*

[145] Fed. R. Civ. P. 12(b)(6).

[146] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

liable for the misconduct alleged."[147]  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[148]

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[149]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[150] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[151]  In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[152]  The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[153]

### B. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of

---

[147] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949) (quotation marks omitted).
[148] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).
[149] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).
[150] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).
[151] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).
[152] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).
[153] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.,* 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004).

law.[154]  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[155]  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[156]  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[157]  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[158]  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[159]

---

[154] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).
[155] *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.
[156] *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.
[157] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[158] *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.
[159] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## III.    ANALYSIS

### A. The exhibits attached to Defendants' Motion fall within the scope of Fed. R. Civ. P. 12(b)(6).

As an initial matter, the Court finds that, in determining whether to grant Defendant's Motion to Dismiss or to convert it to a Motion for Summary Judgment, the Court can consider the exhibits attached to the Defendants' briefs.  The Court can consider the Collateral Note,[160] the Collateral Mortgage,[161] the Promissory Note,[162] the July 19, 2012 Security Agreement,[163] the two Continuing Guaranty's executed by Plaintiffs, [164] and the three Forbearance Agreements [165] because they are all referenced in Plaintiffs' Complaint and central to Plaintiffs' claims.[166]  The Court can also take judicial notice of these documents because they are matters of public record, [167] since they were filed as exhibits in the Bankruptcy and Executory Proceedings.[168]  Additionally, the Court can take judicial notice of the attached pleadings that were filed in the Bankruptcy and Executory Proceedings,[169] the 2014 *pro se* Complaint filed in this Court in Civ. A. No. 14-980,[170] and the February 2016 *pro se* complaint filed in Civil District Court in Case No.16-1530.[171]  With respect to

---

[160] R. Doc. 14-4 at p. 4; R. Doc. 14-5 at p. 3.
[161] R. Doc. 14-4 at pp. 5-10; R. Doc. 14-5 at pp. 4-9.
[162] R. Doc. 14-4 at pp. 21-23.
[163] *Id*. at pp. 11-12.
[164] *Id*. at pp. 13-20.
[165] R. Doc. 14-6 at pp. 6-20.
[166] R. Doc. 1 at ¶¶ 7, 10 -21.
[167] *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996); *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick,* 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).
[168] *See* R. Doc. 14-6 at pp. 21-157.
[169] R. Doc. 14-6 at pp. 21-157; R. Doc. 14-7; R. Doc. 14-9; R. Doc. 14-10; R. Doc. 14-11; R. Doc. 14-12; R. Doc. 14-13; R. Doc. 14-14.
[170] R. Doc. 14-8.
[171] R. Doc. 14-15.

the affidavits submitted by Defendants,[172] which are not pertinent to the Court's analysis, the Fifth Circuit has noted that, "the presence of affidavits in the record that were not relied upon by the district court does not convert the motion to dismiss into one for summary judgment."[173]

Relying upon the foregoing documents, the Court finds that Defendants are entitled to dismissal of all of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6).

### B. Plaintiffs' claims are barred by the release contained in the three Forbearance Agreements.

Defendants first argue that Plaintiffs' claims must be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiffs released all of their claims no less than three times by signing the Forbearance Agreement and two amendments thereto.[174]  Although Plaintiffs strenuously allege that Mr. Shiell's signature was forged on the Collateral Note, the Collateral Mortgage and the Promissory Note,[175] Plaintiffs do not dispute that they signed the November 1, 2013 Forbearance Agreement and the two amendments thereto.[176]  In their Complaint, Plaintiffs readily admit that the original Forbearance Agreement stated that Whitney Bank "possessed a Promissory Note dated September 10, 2012 by Kitchens in the original principal amount of $540,000," and that it included release language that "would otherwise preclude the Shiells from asserting the invalidity of the loan documents."[177]  Nonetheless, Plaintiffs allege that

---

[172] R. Doc. 14-4 at pp. 1-3; R. Doc. 14-5 at pp. 1-2; R. Doc. 14-6 at pp. 4-20.
[173] *Davis v. Bayless*, 70 F.3d 367, 372 (5th Cir. 1995) (citing *Ware Associated Milk Producers, Inc.*, 614 F.2d 413, 415 (5th Cir. 1980)).
[174] R. oc. 14-1 at pp. 12-13.
[175] R. Doc. 1 at ¶ 12; R. Doc. 74 at p. 2; R. Doc. 91.
[176] R. Doc. 1 at ¶¶ 15, 18 & 21.
[177] *Id*. at ¶ 15.

they were fraudulently induced by Whitney Bank to execute the Forbearance Agreements based upon their mistaken belief that Whitney Bank held a valid Promissory Note.[178]   For the reasons that follow, the Court finds that Plaintiffs' assertion lacks merit.

What Plaintiffs fail to mention in their briefs is that, in the original Forbearance Agreement, Plaintiffs specifically acknowledged that as of October 23, 2013, they owed a principal amount of $540,000.000, plus interest, on "the Note," which is defined therein as "that certain Promissory Note dated September 10, 2012 by Kitchens in the original principal amount of $540,000.00."[179]   This September 10, 2012 Note is the exact note which Plaintiffs are now alleging is a forgery and of which they had no notice until April 2016.   Plaintiffs also fail to mention that, throughout the Forbearance Agreement, they acknowledged that their indebtedness under the Note had matured and become due and exigible on September 10, 2013.[180]   By signing the Forbearance Agreement, Whitney Bank agreed to "forbear from collecting the full amount of the Indebtedness . . . upon maturity and from immediately enforcing all of its rights and remedies under the Loan Documents,"[181] in exchange for Plaintiffs and Kitchens agreeing to "forever Settle and Release all Claims against Whitney."[182]   The Forbearance Agreement defines the term "Whitney" to include "all members, managers, officers, directors, . . . attorneys, . . . employees, agents, representatives,

---

[178] R. Doc. 1 at ¶¶ 15, 18, 21.
[179] R. Doc. 14-6 at p. 8, ¶ 1(f) &  p. 9, ¶ 2.
[180] *Id*. at p. 6 & p. 9, ¶ 3.
[181] *Id*. at p. 6 & p. 10, ¶ 6.
[182] R. Doc. 14-6 at p. 11.

legal representatives, . . . successors, and assigns of the respective Obligor(s) and Whitney."[183]  Thus, Plaintiffs specifically agreed to release and settle certain claims against Defendants, who are employees and attorneys employed by Whitney Bank.

In the Forbearance Agreement, the parties defined the term "Release" as "to fully, finally, and forever release, acquit, discharge, surrender, and cancel from the public records," and defined the term "Settle" as "to fully, finally, and forever release, acquit, discharge, surrender, and cancel from the public records."[184]  The Forbearance Agreement further defines the term "Claims" to include the following:

> [A]ny and all claims, rights, demands, damages, actions, causes of action, obligations, expenses, interest, costs, payments, debts, losses, attorneys' fees and liabilities of any nature whatsoever, including, but not limited to, those arising in tort, negligence, intentional conduct, federal or state law, federal or state statutes, fraud, lender liability, lack of good faith . . . or arising in any other way whatsoever, now existing or hereafter arising, known or unknown, . . . arising out of or related to any acts or omissions or alleged acts or alleged omissions of any kind by Whitney, including, but not limited to:
>
> . . . .
>
> (iii) those arising out of or in any way connected with or related to the Loan Documents as hereinafter defined or the transfer of the Loan Documents to Whitney.[185]

The term "Loan Documents" is defined to include, among other things, the following:

> (i) [that certain Promissory Note dated September 10, 2012 by Kitchens in the original principal amount of $540,000.00];

---

[183] *Id*. at p. 7, ¶ 1(b).
[184] *Id*. at p. 8, ¶¶ (1)(h) & (i).
[185] *Id*. at pp. 7-8, ¶ 1(c)(iii).

. . . .

> (xi) Collateral Mortgage and Assignment of Leases and Rents dated July 19, 2012 by [Mr. Shiell] (370 Rue Chardonnay, Metairie, Louisiana 70002);
>
> (xii) Collateral Note dated July 9, 2012 in the amount of $1,500,000.00 by [Mr. Shiell]; . . . .[186]

The Forbearance Agreement also contains a "Consent" provision, which provides that, "Each of the parties hereto certifies that such party is executing this Agreement under the advice of such party's own counsel, after due deliberation and will full knowledge of all circumstances surrounding or relating to the matters covered hereby."[187]  Importantly, the provision further states that, "Obligors acknowledge that Obligors have read all the provisions of this Agreement and agrees [sic] to its terms."[188]

    In both the First Amendment to Forbearance Agreement (hereafter, the "First Amended Forbearance Agreement"), and the Second Amendment to Forbearance Agreement (hereafter, the "Second Amended Forbearance Agreement"), Plaintiffs and Kitchens again acknowledged the principal amount due under the Promissory Note, plus interest, and agreed that, "Obligors do hereby forever Settle and Release all claims against Whitney." [189]  The First and Second Amended Forbearance Agreements specify that, "Capitalized terms herein have the same meanings as were ascribed to such terms in the [certain Forbearance Agreement dated as of November

---

[186] *Id*. at p. 8, ¶ 1(e)(i), (xi) & (xii).
[187] *Id*. at p. 14, ¶ 22.
[188] *Id*.
[189] R. Doc. 14-6 at p. 16, ¶¶ 2, 5 & p. 19, ¶¶ 2, 5.

1, 2013]."[190]  The First Amended Forbearance Agreement also includes the following

representation by Plaintiffs:

> [Mrs. Shiell] and [Mr. Shiell] represent and warrant that
> (i) each of them and the other are of sound mind and have
> full capacity to enter into the Agreement and this
> Amendment, (ii) each of them and the other have read the
> Agreement and this Amendment, and (iii) each of them and
> the other fully comprehend and understand all of the terms
> of this Amendment and the Agreement.  [Mrs. Shiell] and
> [Mr. Shiell] represent and warrant that either or both of
> them are fully authorized to act on behalf of Kitchens[Mrs.
> Shiell] and [Mr. Shiell] represent and warrant that they
> each understand that under the Agreement and this
> Amendment the Obligors have released claims against
> Whitney and have acknowledged the amount of the
> Indebtedness among other terms.[191]

The Second Amended Forbearance Agreement contains a similar provision, whereby

Plaintiffs represented that they were of sound mind had full capacity to enter all

three Forbearance Agreements, that they had each read all three Forbearance

Agreements, and that they each fully comprehended and understood all of the terms

of the three Forbearance Agreements.[192]  While Plaintiffs have alleged that William

Shiell was undergoing treatment for cancer, they have not provided any evidence to

allege or support that he was not of sound mind in signing the documents.

Although not addressed by the parties, the original Forbearance Agreement

contains a choice of law provision, which specifies that the Forbearance Agreement

shall be governed by Louisiana law "without regard to the conflict of laws principals

---

[190] R. Doc. 14-6 at p. 16, ¶ 1; R. Doc. 14-6 at p. 19, ¶ 1.
[191] R. Doc. 14-6 at p. 17, ¶ 10.
[192] *Id*. at p. 20, ¶ 8.

of such state."[193]   Because the parties agreed that any dispute over the Forbearance Agreement would be governed by Louisiana law, the Court finds that it must apply Louisiana law in determining whether the release language bars Plaintiffs' claims in this case.   Under Louisiana law, "Interpretation of a contract is the determination of the common intent of the parties."[194]   However, "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[195]   Louisiana law also provides that, "The words of a contract must be given their generally prevailing meaning.   Words of art and technical terms must be given their technical meaning when the contract involves a technical matter."[196]

The Court finds that words of the three Forbearance Agreements are clear and explicit, including the release language.   By signing three Forbearance Agreements, Plaintiffs and Kitchens specifically agreed to settle and relinquish any all claims they may have against Whitney Bank, its employees and its attorneys, including those based on federal law and fraud, arising out of the "Loan Documents," which specifically include the Collateral Note, the Collateral Mortgage, and the Promissory Note.[197]   Thus, Plaintiffs released the RICO claims asserted against Defendants in this case, since Defendants are Whitney Bank's employees and attorneys and the claims are based upon federal law and fraud.   Although Plaintiffs claim that they

---

[193] R. Doc. 14-6 at p. 14, ¶ 20.
[194] La. Civ. Code art. 2045.
[195] La. Civ. Code art. 2046.
[196] La. Civ. Code art. 2047.
[197] R. Doc. 14-6 at pp.7-8, ¶ 1 & p. 11, ¶ 7.

were fraudulently induced to sign the three Forbearance Agreements, the clear language of the Forbearance Agreements contradict their assertion.  As previously mentioned, all three Forbearance Agreements include "Consent" provisions, through which Plaintiffs agreed that they had read all the provisions of the Forbearance Agreements and agreed to their terms, which includes the terms of the release.[198] Plaintiffs offer no explanation for the inherent contradiction between the Consent provisions in the three Forbearance Agreements and their allegations of forgery in this case.  Accordingly, the Court finds that, under the clear and explicit language of the three Forbearance Agreements, Plaintiffs and Kitchens settled and released all of the claims asserted against the Defendants in this case.  Accordingly, Defendants are entitled to dismissal of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6).

### C. Plaintiffs' claims are also barred by *res judicata.*

Defendants also claim that their Motion to Dismiss should be granted based upon the doctrine of *res judicata.*  Defendants correctly cite *In re Southmark Corp.*, wherein the Fifth Circuit established that the following four elements are required to bar a claim on the grounds of *res judicata*: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.[199]  Defendants claim that *res judicata* applies in this case based upon the Bankruptcy Court's Order Lifting Stay and the June 12, 2015 Order issued by the state court in the Executory Proceeding,

---

[198] R. Doc. 14-6 at p. 14, ¶ 22; R. Doc. 14-6 at p. 17, ¶ 10; R. Doc. 14-6 at p. 20, ¶ 8.
[199] R. Doc. 14-1 at p. 14 (citing *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999)).

which are valid, final orders ruling on the validity and enforceability of the loan documents and the Collateral Mortgage.[200]  Defendants argue that the parties are in privity with each other, that the judgments entered by the Bankruptcy Court and the 24th JDC were final judgments on the merits entered by courts of competent jurisdiction, and that the matters arise from the same nucleus of operative facts as the instant case, since both of the prior proceeding required that Whitney Bank had a valid and perfected lien upon the Metairie Property.[201]

In response, Plaintiffs concede that they had knowledge of, and had been served with, a copy of the Petition filed in the Executory Proceeding, and that they had knowledge of the Bankruptcy Proceeding.[202]  Plaintiffs further concede that, "This Third Forbearance agreement and all the questioned loan documents were also made part of another legal proceeding authored by Defendant Waguespack, a Motion to Lift the Bankruptcy Stay on Plaintiff William Shiell's property."[203]  Plaintiffs contend that only their attorney was served in the Bankruptcy Proceeding, who thereafter filed responsive pleadings, but did not forward the documents to Plaintiffs.[204]  Plaintiffs claim that they did not receive all of the documents filed in that matter until their attorney turned over their file to them in April 2016.[205]  Plaintiffs do not provide any documentation to support this

---

[200] R. Doc. 14-1 at p. 14 (*citing* R. Docs. 14-9 & 14-14).
[201] R. Doc. 14-1 at pp. 14-17.
[202] R. Doc. 74 at pp. 4-5.
[203] *Id*. at p. 5.
[204] *Id*.
[205] *Id*.

assertion.  Plaintiffs argue that:

> There is no res judicate [sic], as Defendants claim, as the
> cases previously decided against Plaintiffs were already
> decided by the courts before the Plaintiffs had an
> opportunity to oppose them base on the forgery they
> discovered in the notes in April 2016.  Plaintiffs had not
> been provided with copies of the allegedly forged loan
> documents files [sic] either in the Executory Process or the
> Bankruptcy Motion to Lift the Stay in 2015, and did not see
> these actual documents until April 2016 . . . .[206]

In their Reply brief, Defendants point out that, in their briefs, Plaintiffs have

admitted to signing the three Forbearance Agreements, wherein they expressly

acknowledged the Alleged Forged Documents and released all claims arising out of

those documents against Whitney Bank, its employees and its attorneys.[207]

Defendants point out that Whitney Bank attached the Alleged Forged Documents to

its Motion for Relief From Automatic Stay, filed in the Bankruptcy Proceeding on

October 23, 2015, to which Mr. Shiell, represented by counsel, filed a one-page

Objection with no mention of forgery.[208]  Defendants also assert that Plaintiffs

admitted signing the Alleged Forged Documents in their Answer to Whitney Bank's

Petition in the Executory Proceeding, filed on August 31, 2015.[209]

Although not addressed by the parties, the Court notes that the Fifth Circuit

has held that:

> Although *res judicata* generally cannot be raised in a
> motion to dismiss and should instead "be pleaded as an
> affirmative defense," dismissal under Rule 12(b)(6) is
> appropriate if the *res judicata* bar is apparent from the

---

[206] *Id*. at p. 11.
[207] R. Doc. 85 at p. 3.
[208] *Id*. at p. 4.
[209] *Id*. at pp. 4-5.

> complaint and judicially noticed facts and the plaintiff fails
> to challenge the defendant's failure to plead it as an
> affirmative defense.[210]

Plaintiffs raise no such challenge in this case.  Accordingly, the Court can address the issue of *res judicata* and take judicial notice of the prior judgments issued in the Bankruptcy and Executory Proceedings.

According to the Fifth Circuit, *res judicata* bars the subsequent litigation of claims that have been litigated or should have been raised in an earlier suit.[211] Preclusion of a claim under *res judicata* principles requires four elements: (1) the prior judgment must have been rendered by a court of competent jurisdiction; (2) there must be a final judgment on the merits; (3) the parties, or those in privity with them, must be identical in the two actions; and (4) the same claim or cause of action must be involved in both actions.[212]

Although not mentioned by Defendants, Plaintiffs do not dispute that the four requirements are met, and instead argue that they were not served with the pleadings filed in those proceedings until after the judgments were issued.  As previously noted, Plaintiffs provide no evidence to support this assertion.  Further, Defendants have shown that the four elements required for *res judicata* are met in this case and bar Plaintiffs' claims.  As Defendants point out,[213] the first two elements are met because the Bankruptcy Court's December 10, 2015 Order Lifting Stay and

---

[210] *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020) (citing *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570, n.2 (5th Cir. 2005)).
[211] *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 330 (5th Cir. 2007).
[212] *Id.* (citing *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2004)).
[213] R. Doc. 14-1 at p. 14.

the 24th JDC's June 12, 2015 Order granting the seizure and sale of the Metairie Property are both valid, final orders ruling on the validity and enforceability of the loan documents at issue in this case, including the Promissory Note, the Collateral Note and the Collateral Mortgage.

With respect to the third requirement, the Fifth Circuit has held that, "'Privity' is recognized as a broad concept, which requires us to look to the surrounding circumstances to determine whether claim preclusion is justified."[214]   The Fifth Circuit further clarified that, "In short, parties which are sufficiently related to merit the application of claim preclusion are in privity."[215]   The Court recognizes that Defendants were not parties to the Executory and Bankruptcy Proceedings, which involved only Whitney Bank.   Nonetheless, as alleged in the Complaint, at all relevant times, Jones and Berns were acting as Whitney Bank's employees and Clark and Waguespack were acting as Whitney Bank's outside counsel.[216]   The Fifth Circuit has recognized that the vicarious liability relationship between employers and employees allow them to be in privity with each other for *res judicata* purposes.[217]   Additionally, Defendants are Whitney Bank's employees and attorneys and, as such, are specifically included in the terms of the release contained in the three Forbearance Agreements.   As such, the Court concludes that Defendants are in privity with Whitney Bank.

---

[214] *Russell v. SunAmerica Securities, Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992).
[215] *Id*. at 1174.
[216] R. Doc. 1 at ¶¶ 2-6.
[217] *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1289 (5th Cir. 1989).

The Court also finds that Plaintiffs were both parties to the Executory Proceeding and, although Mrs. Shiell was not a party to the Bankruptcy Proceeding, she is in privity with Mr. Shiell based upon the "virtual representation" exception and her involvement with the underlying loan documents.[218]  Under this exception, "a person may be bound by a [prior] judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative."[219]  Here, Mrs. Shiell's interests are strongly aligned with those of Mr. Shiell, evidenced by the fact that she signed several of the loan documents that were at issue in the Bankruptcy and Executory Proceedings, including the Collateral Mortgage (as an intervenor), the Continuing Guaranty,[220] and the three Forbearance Agreements.[221]  Accordingly, the Court finds that the third requirement for *res judicata* is met.

Turning to the fourth and final factor, the Fifth Circuit has held that, in determining whether the same claim or cause of action was involved in both cases, the two actions must be based upon the same nucleus of operative facts.[222]  The Court finds that Plaintiffs' claims in this case arise from the same nucleus of operative facts as the Bankruptcy and Executory Proceeding, namely the foreclosure on the Metairie Property based upon the Promissory Note, the Collateral Note and the Collateral Mortgage.  The Court notes that Plaintiffs initially alleged in their Complaint that

---

[218] *See Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 863 (5th Cir. 1985).
[219] *Id.* (quoting *Aerojet General corporation v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975)) (internal quotation marks omitted).
[220] R. Doc. 14-4 at pp. 17-20.
[221] R. Doc. 14-6 at pp. 6-20.
[222] *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 330 (5th Cir. 2007) (citation omitted).

they did not see the three foregoing documents until the "later bankruptcy proceedings, on or after October 23, 2015,"[223] but subsequently alleged that they did not see these documents until April 2016.[224]  While this date seems to be a moving target in Plaintiffs' briefs, as previously discussed, Plaintiffs represented in the original Forbearance Agreements, dated November 1, 2013, that they had read and agreed to all of its terms, including the specific reference to the Collateral Note, the Promissory Note and the Collateral Mortgage.[225]   The Court, therefore, finds Plaintiffs' assertions unpersuasive.  As such, the final element of *res judicata* is satisfied and this action is precluded by the judgments issued in the Bankruptcy Proceeding and the Executory Proceeding.[226]

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment[227] is **GRANTED** and Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, May 11, 2020.

*Wendy B Vitter*

**WENDY B. VITTER**
**United States District Judge**

---

[223] R. Doc. 1 at ¶ 15.
[224] R. Doc. 74 at pp. 2-3, 5, 6, 11.
[225] R. Doc. 14-6 at p. 8, ¶ 1(e) & p. 14, ¶ 22.
[226] The Court notes that Defendants raise several other arguments in support of their Motion to Dismiss.  Having found merit to Defendants' arguments regarding release and *res judicata*, the Court does not find it necessary to analyze and address each of those arguments.
[227] R. Doc. 14.